Manu *et al. v.* Neil Campbell, Guardian.

## SUPREME COURT—IN BANCO.

### APRIL TERM, 1882—IN EQUITY.

*Judd, C. J., McCully and Austin, J. J.*

MANU ET AL. *vs.* NEIL CAMPBELL, GUARDIAN.

#### ON APPEAL.

A BILL IN EQUITY alleging that a deed had been procured to be made by a grantor by undue influence and false representations and under the belief that it was a will devising his land to all his heirs at law, and praying for an injunction against defendants taking possession of the land under a judgment previously obtained, and that the deed may be delivered up for cancellation, will not sustain, under the prayer for general relief (the proofs having failed), a decree declaring a trust in the grantee ; but the bill must be dismissed without prejudice.

Opinion of the Court by McCULLY, J.

The bill alleges that the grantor Inaina at the date of the deed was and had been of unsou nd, weak and infirm mind as well as body, and unable from mental weakness to transact business understandingly.

That the plaintiffs living on Inaina's land had supported him to the time of his death, at 75 years of age.

That the deed was procured from him by undue influence and false representations, and that he did not execute the same understandingly or knowing the contents thereof, but was induced to believe and did believe that the same was in the nature of a will devising the land to all his heirs at law. It is also averred in the bill that the grantee of the deed was absent from the Kingdom when the deed was made.

And prays: That the deed may be ordered to be cancelled, and for the general relief. Upon examination of the testi-

mony, we are of the opinion expressed by the Chief Justice in the first instance in these words: " That Kamaka was present when the deed of Inaina to him was signed; also, that the proofs do not show that undue influence was used over Inaina or that he was imbecile or insane when he executed the deed."

D. K. Naiapaakai, at that time one of the Circuit Judges of Hawaii, who drew the deed and took the acknowledgment was produced as a witness by the defendant. He testifies that he lived five miles from the place where Inaina and Kamaka lived, and that on the day of the date of the deed these two came to his house. Inaina stated the object of the visit, he said he wanted to sell his land, and witnesses' recollection is that Kamaka said the consideration was $30.

Witness then drew the deed, the parties having with them the royal patent, and took Inaina's acknowledgment of execution and delivered the deed to Kamaka. And the deed dated February, 1866, was placed on record in June, 1867. After that Inaina asked him to return with them, and the witness having some business that way rode with them. Some lawyers and members of the witnesses' family were present at the writing and execution of the deed, and " quite a party " rode back with Inaina. Kamaka and others stopped at Makapala on the way. Witness and a lawyer named Lohiau went to Inaina's house, " When we got to his house he said he was old and had no children of his own. He pointed to an old woman, who he said was his sister, and also all of these children, and said that plaintiffs and Kamaka were children of his sister. He said in order that Kekuanaoa's children may not have the land he deeded it to Kamaka. I told him the deed was made to Kamaka and he ought to have told me this before."

Kalaaukane was a witness who was present at Naiapaakai's house and remembers that Inaina wanted to make a deed to his keiki (Kamaka).

Emalia, the widow of Kamaka, testifies that they were

63

married in 1870, her husband then living on this land cultivating a part of it, and Zebedaia and Manu, also living on and cultivating other portions. She had seen the deed and patent, when Kamaka borrowed money on them of Dr. Wight and afterwards deposited them with Judge Hart as security on his crop.

Zebedaia, one of the plaintiffs, testfies to declarations of Inaina before making the deed that he intended his *keikis'* who were then living on his land, Kamaka not then residing there should have his land, and that it should pass to their children.

We have to consider, in the first place, whether under the allegations of the bill and the proofs thereon any decree can be made in favor of the plaintiffs.

The bill prays specifically for a writ of injunction against the defendants, taking possession under a judgment previously obtained, and that the deed be delivered up and cancelled, but the ground of fraud having failed of proof these prayers are denied and were abandoned on the appeal by the plaintiff's counsel. There is no doubt that when the plaintiff in the view of the Court mistakes his relief, the Court may under the prayer for general relief grant him some other than the specific relief prayed for, but it must be founded on averments in his bill which have been sustained. If the proofs have not supported the allegations to a substantial extent, and he is therefore denied what he specifically prayed for, there is no principle on which he can be awarded something under the prayer for general relief based on no averment in the bill. Story Eq. Pleadings, 42.

In this case the plaintiffs allege incompetency, fraud and misrepresentation which they do not prove, and ask for an injunction and cancellation of the deed. These prayers having been properly denied, there is in our view nothing else to be afforded them in accordance with the supposition that this was a deed competently and fairly made but intended to be a

trust deed, this matter not having been made on the bill.

The bill must therefore be dismissed with leave, however, to bring a new bill framed on another theory of the case.

A. S. Hartwell for plaintiff.

E. Preston and C. Brown for defendants.

Honolulu, August 16, 1882.